19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 00-CR-50054-1
Plaintiff(s),                          Hon. Judge Bernard A. Friedman

vs.

JAMES DWIGHT LEWIS,
Defendant._____/

EMERGENCY MOTION FOR
COMPASSIONATE RELEASE IN LIGHT OF COVID-19
PURSUANT TO SECTION 603(B)(1) OF
THE FIRSTE STEP ACT

    COMES NOW, the Defendant, James Dwight Lewis, pro se and **unskilled** in the field of law, and respectfully moves this Honorable Court with his emergency motion for compassionate release pursuant to Section 603(B)(1) of the First Step Act. This motion is brought forth in good faith in the interest of justice. The memorandum of law in support brief accompanying this motion is incorporated here within.

Date: June 23, 2020

Respectfully Submitting,
/s/ James Dwight Lewis
James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

## CERTIFICATE OF SERVICE

    I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, Postage prepaid. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained and has no other means.

    Done this __23__ day of June 2020

        Respectfully Submitting,
/s/ _James Dwight Lewis_
James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,                 Case No. 00-CR-50054-1
Plaintiff(s),                             Hon. Judge Bernard A. Friedman

vs.

JAMES DWIGHT LEWIS.
Defendant.                      /

MEMORANDUM OF LAW BRIEF IN SUPPORT OF
EMERGENCY MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO SECTION 603(B)(1) OF
THE FIRST STEP ACT

James Dwight Lewis, is incarcerated at FCI Lompoc, where COVID-19 has infected over 900 inmates, including Lewis. Mr. Lewis respectfully asks this Court to grant his motion for comapssionate release under 18 U.S.C. §3582(c)(1)(A) for extraordinary and compelling reasons. These reasons are spread of the novel coronavirus at FCI Lompoc coupled with his morbid obesity, high cholestorel, metabolic disorder and sickle cell trait which place him at a high risk for serious illness or death due to COVID-19.

I. BACKGROUND

On August 10, 2001, Mr. Lewis was found guilty on Counts One; Conspiracy to distribute 5 kilograms or more of powder cocaine and 50 grams or more of cocaine base, Count Three; Possession with the intent to distribute 50 grams or more of cocaine base, and Count Four; Felon in possession of a firearm. On November 21, 2001, he was sentenced to life imprisonment on counts One and Three, plus 10 years imprisonment on count Four, to be served concurrently, with 7 years of supervised release.

On June 8, 2012, Mr. Lewis was resentenced to 360 months on counts One and Three under 18 U.S.C. §3582(c)(2).

II. ARGUMENT

A. Mr. Lewis has exhausted his administrative remedies. On April 7, 2020, Mr. Lewis filed his request to the Warden of his facility for compassionate release. On April 13, 2020, Mr. Lewis recevied his denial for his request for compassionate release. See Exhibit "A". More than thirty days have passed since Mr. Lewis submitted his request to the Warden at the facility where he is confirmed. See Brown v. United States, 411 F.Supp.3d 446, 452 (S.D. Iowa 2019)("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it."); also see United States v. Parker, 2020 U.S. Dist. LEXIS 89904 (CD Cal. May 21, 2020).

Under 18 U.S.C. §3582(c)(1)(A), the Court may reduce a defendant's sentence upon motion by the Bureau of Prisons, or a motion by the defendant after the defendant has exhausted his administrative appeals. The defendant can move directly with the court after the BOP refuses to move on the defendant's behalf or a lapes of 30 days from the time the appeal was filed, whichever is sooner.

On April 7, 2020, Mr. Lewis submitted a request for compassionate release with the Warden of FCI Lompoc. He has already received one denial from the BOP, which he has appealed. See Exhibits "A" and "B". Mr. Lewis has now appealed the second denial to the Western Regional Director on May 29, 2020. See Exhibit "C".

Mr. Lewis asserts that Equitable Exceptions available to which he request equitable tolling relief. See United States v. Bess, 2020 U.S. Dist. LEXIS 71056, 2020 WL 1940809, at *7. "For this narrow exception to apply, a plaintiff must show (1) that he has been pursuing

2

his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." See Sandoz v. Cingular Wireless, L.L.C., 700 F. App'x 317, 320 (5th Cir. 2017).

Here, Mr. Lewis meets both elements. Prior to this motion being filed, Mr. Lewis began the administrative process to request relief and was denied at its first stage. He has since appeled the decision and still awaits an answer from the Regional Director, where an order from the Court is warranted to expedite these proceedings. Accordingly, Mr. Lewis has diligently pursued his rights.

Subsequently, 30 days have lapsed since his submission of his request and the BOP has failed to move on his behalf. Because he has exhausted his administrative remedies, the Court has the ability to grant the Defendant's motion for sentence reduction or release under 18 U.S.C. §3582(c)(1)(A).

B. Mr. Lewis's preexisting conditions coupled with his confinement at the epiccenter of the pandemic are extraordinary and compelling reasons for his release.

The Court may reduce a defendant's sentence only when there are "extraordinary and compelling reasons" in favor of relief. Those reasons may be found when "the defendant is suffering from serious physical or medical condition... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See §1B1.13 cmt. n. 1(A)(ii).

The World Health Organization (WHO) has classified the spread of COVID-19 as a worldwide pandemic. As of June 5, approximately 1.8 million Americans were confirmed to have COVID-19. Ctrs. for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19), https://

www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 5, 2020). Over 120,000 people have died in the United States alone.

The nation's prisons have not been insulated from the pandemic. On the contrary, they are uniquely hospitable to the spread of the disease, At the time of this filing more than 6,674 inmates and over 630 staff have tested positive for COVID-19. Bureau of Prisons, COVID-19 Update, http://www.bop.gov/coronavirus/ (last visited June 5, 2020). Over 52 federal inmates have died.

"Prisons are tinderboxes for infectious disease." United States v. Rodriguez, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020). Inmates at BOP facilities are physically impeded from practicing proper self-care and social distancing. Even if the facilities only operate at their maximum capacity, there are not enough solitary cells to keep the inmates protected from infection. Conditions at overcrowded facilities like the open-dormitory setting at FCI Lompoc are even worse.

Given the precarious situation of those with medical conditions in federal prisons, extraordinary and compelling reasons are found in cases where the medical condition, on its own, would not have been enough to grant compassionate release. See United States v. Brickhouse, 2020 U.S. Dist. LEXIS 84987 (2nd Cir. May 14, 2020); United States v. Barber, 2020 U.S. Dist. LEXIS 83457 (9th Cir. May 12, 2020)(granting reduction where risk factor identified obesity and diabetes).

Lompoc's inability to give prisoners space, medical care, and protective equipment is frustrating compounded by their refusal to even take medical requests becuase of the sheer volume. The BOP cannot fail to make their facilities unsafe and then refuse to accept the consequences of its failure. Inmates with mild underlying medical conditions would not need to ask for release if they were properly taken care of within the facility. As Mr. Lewis has been complaining

4

of being denied proper medical treatment at FCI Lompoc, before this global pandemic began. See Exhibit "D". Exhibit "D" also confirms that Mr. Lewis weighed 384 pounds on Feb. 11, 2020, which classify him as suffering from morbid obesity.

FCI Lompoc is a particularly hostile enviornment for people to be living in throughout this pandemic. Over nine hundred inmates have tested positive for COVID-19 at Lompoc, which had 1,196 inmates total population at the time of testing. It is the largest outbreak in a BOP facility in the United States. See Torres v. Milusnic, Case 2:20-cv-04450 (C.D.C.A. May 16, 2020).

COVID-19 has been particularly successful in invading almost every part of the facility, both because of the inherent nature of prisons and because there has been almost no attempt by Lompoc to adhere to the guidelines issued by the WHO, the Center for Disease Control (CDC), and the BOP itself. See U.S. Dep't of Labor, Notice of Alleged Safety or Health Hazards (March 31, 2020), https://www.afge.org/globalassets/-documents/generalreports/coronavirus/4/osha-7form-national-complaint.pdf. Inmates are living in extremely close quarters without eye glasses protection, hand sanitizer, personal protective equipment, or even clean cloths at times. Up to 250 inmates live in an open-plan dormitory, sleep 2-3 feet away from each other, share six toilets, showers, and a single water fountain.

Before the mass testing, inmates who came forward with symptoms were left to languish in solitary confinement for days before returned to general population. Those returned to general population are not tested before they reenter, leaving open the very real possibility that they are still infectious. In one case, Muhammad Yusuf, was refused medical treatment, until a staff member personally requested that he receive some form of medical treatment. Unfortunately, Muhammad died on May 25, 2020, while still in the open dormitory where Mr. Lewis is

5

currently housed. Muhammad was suffering from complications of COVID-19. On May 7, 2020, he tested positive for COVID-19 and was not isolated as the BOP has released their statement to the public concerning Muhammad's death. See Exhibit "E". Not only is the BOP lying about isolating Muhammad after he tested positive on May 7, 2020. But, the BOP is lying about their response to his death. The second officer arrived on the seen, literally began pulling Muhammad up off of the floor. Yes, Muhammad was still breathing when staff arrived. It was not until he was man-handle by staff that he lost total conscienceness.

Mr. Lewis was also recommended to be isolated after his first test results came back indeterminate. The BOP left him amongs the infected inmates for a week before the BOP reteseted him. Due to his first attempt at compassionate release on April 7, 2020, staff had knowledge of Mr. Lewis' preexisting medical conditions, which contracting COVID-19 could have been potentially fatal to his health.

Even without preexisting health concerns the conditions at FCI Lompoc are harrowing and inhumane. Unfortunately for Mr. Lewis, he is 43 years of age with numerous medical conditions stemming from his morbid obesity. Morbid obesity has frequently serious underlying medical conditions such as pulmonary hypertension, sleep apnea and cor pulmonary (rightsided) heart failure. All which increases the risk of hypercoagulability of the blood in a person with sickle cell trait. And being infected with the COVID-19 virus, Mr. Lewis needs an echocardiogram, a pulmonary function test, and a sleep apnea study preformed in a sleep lab by a pulmonologist. Plus, a cardiology consult to work up/evaluate his shortness of breath when just merely walking the recreation area or up and down stairs to rule out pulmonary hypertension and cor pulmonale. FCI Lompoc is negligent in medical assistance to inmates. Prime example the death of Muhammad Yusuf.

Mr. Lewis' preexisting medical conditions of morbid obesity, high cholestorel, metabolic disorder and sickle cell trait, would make him

particularly vulnerable to COVID-19 even in the best of circumstances. The CDC says those with morbid obesity, metabolic disorders, blood disorders, needs to strictly to adhere to their Healthcare Action plan, which involves access to a healthcare provider. See Ctrs. for Disease Control & Prevention, Group at Higher Risk for Severe Illness, http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/peopleat-higher-risk.html (last visited May 26, 2020). At FCI Lompoc, the staff has been refusing to accept requests for medical care since the start of the outbreak. Torres, Case 2:20-cv-04450.

In early May, the inevitable happened: Lewis tested positive for COVID-19. He was initially recommended to be isolated and retested because his first test was indeterminate. Because of the negligence of the BOP, Lewis was not isolated from the infected inmate population, which he later contracting COVID-19 between testing. When he complained of not being able to breath properly. He was informed he would only be taken to sick call if he had a temperature, a symptom that is present in many, but not all, cases of COVID-19. He and the rest of his dorm were swabbed, and Lewis estimates that 90% of the 70-man dorm tested positive. This statistic is consistent with the case rate over the entire population of the prison. Tyler Haden, Lompoc Prison Explodes with Active COVID-19 Cases, Santa Barbara Independent (May 13, 2020) https://www.independent.com/2020/05/13/lompoc-prison-explodes-with-activecovid-19-cases/.

The medical resources at Lompoc are so strained that those who need treatment for their preexisting conditions are not being treated. Prisoners are not treated until they hit rock bottom. Torres, Case 2:20-cv-04450. In one case, an inmate with prostate cancer was unable to receive cancer treatment because of the strain on resources. Id.

Lewis has been prescribed an Albuterol Sulfate inhaler for his troubled breathing and 10mg high cholestorel. Lewis had contracted another mild case of COVID-19 where he was prescribed a Z-Pak medication.

7

His medical conditions are not, on their own, cause for a reduction in sentence. But his conditions make him especially vulnerable in the middle of a pandemic of a deadly disease. His vulnerability within a facility that is essentially a cesspool of infection could be a death sentence.

In the face of contracting COVID-19, Lewis has more than elevated risk or mere possibility of serious illness. Because of his preexisting conditions, he is at significant risk for life-threatening illness.

Lewis cannot adequetly protect himself while in prison. In Mr. Lewis' case, reduction of his sentence or transfer to home confinement is warranted due to both his family related circumstances and the danger presented by the COVID-19 pandemic. He has three children, that he barely knows. His father is elderly with lung disease from smoking, which contracting COVID-19 could kill him. Mr. Lewis will be his only child in the state of Michigan to take care of him.

C. 18 U.S.C. §3553(a) factors weigh heavily in favor of relief.

Even if there are extraordinary and compelling reasons present, the Court must also consider whether the factors set forth in 18 U.S.C. §3553(a) support a reduction.

Service of most of the sentence reflects the seriousness of the offense. Mr. Lewis has served more than 75% of his sentence according to his projected home confinement eligibility date in December of 2025. Requiring prisoners to serve the rest of their sentence in a BOP facility during the pandemic, especially FCI Lompoc, is a "significant hardship beyond the sentence itself." See United States v. Mel, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). "Indeed, the actual severity of the sentence a s result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentenceing." Id. at 3.

8

If the Court is not satisfied that the Defendant was sufficiently deterred, then the Court can impose home confinement to protect the health of the Defendant. The BOP is encouraged to do so under Attorney General Barr's memos on Apr. 3, 2020 and March 26, 2020. Memorandum from the Attorney General to the Director of the Bureau of Prisons (March 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf. In those memos, Attorney General Barr directed the BOP to immediately maximize appropriate transfers to home confinement and review all inmates with high COVID-19 risk factors, not just ones previously eligible for transfer.

If the BOP, in spite of all the reasons urging it to do so, fail to transfer a prisoner to home conefinement, "the Court can order a defendant to remain at his residence, under electronic monitoring, as a condition of supervised release." See United States v. Jenkins, 4:15-cr-03079 (D. Neb. May 26, 2020). Home detention may be imposed as a substitute for imprisonment. See U.S.S.G. §5F1.2; see also United States v. Iverson, 90 F.3d 1340, 1343 (8th Cir. 1996).

Mr. Lewis would like to bring to the Court's attention other cases of inmates that have tested positive at FCI Lompoc who have been granted compassionate release, after testing positive. See United States v. Barber, 2020 U.S. Dist. LEXIS 83457 (D. Or. May 12, 2020); United States v. Baron, No. 2:06-CR-02095-SAB-1 (E.D. Wash. June 16, 2020). Just to name a few.

As of the date of this filing, Mr. Lewis has served 238 months of his 360 months sentence. While reducing his sentence to time served would detract from the seriousness of his offense, keeping him at Lompoc under these conditions would exceed the severity of the initial sentence imposed. Mr. Lewis has a healthy home and suitable plan for release or home confinement should the Court deem appropriately fit with his ex-wife in Flint, Michigan. He is not a danger to the community.

Mr. Lewis is a non-violent drug offender. There are no victims in his case. He is remorseful for the misdeeds and actions he made against his community. He is still young enough to be reformed and be productive in society. All of his siblings have moved to the state of Arizona since his incarceration. That is why he stressed releasing to his sister's home in Arizona in his previous compassionate release motion. He now has the permission to return home to his ex-wife, which gives him a greater opportunity to quarantine himself with limited people in the house-hold.

## CONCLUSION

WHEREFORE NOW, above premises considered, the Defendant respectfully prays and requests that this Honorable Court GRANT [his] motion and all relief the Court deems fit sua sponte.

Date: June 23, 2020

Respectfully Submitting,

/s/ *James Dwight Lewis*
James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

## CERTIFICATE OF SERVICE

    I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, Postage prepaid. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained and has no other means.

    Done this __23__ day of June 2020

        Respectfully Submitting,
/s/ *James Dwight Lewis*
James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

EXHIBIT "A"



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*
*3901 Klein Blvd.*
*Lompoc, California 93436*

April 13, 2020

**MEMORANDUM FOR LEWIS, JAMES, REG. NO. 28192-039**

B. BR

**FROM:** B. von Blanckensee, Acting Complex Warden

**SUBJECT:** Compassionate Release Review

You requested a reduction in sentence (RIS) based on concerns about COVID-19. After careful consideration, your request is denied.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

EXHIBIT "B"

1016562-F1

FCC Lompoc

This is in response to your Request for Administrative Remedy, dated April 22, 2020, in which you appeal the Warden's decision to not grant you a compassionate release.

Our investigation reveals the Warden determined you were not appropriate for a compassionate release on April 13, 2020, based on the lack of any qualifying reasons that meet the criteria listed in Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>.   In your appeal, you assert your morbid obesity and possible pulmonary hypertension meet the above-referenced policy as "extraordinary and compelling" reasons to support a compassionate release determination by the Director.   However, our review indicates these conditions are neither terminal nor debilitating to the degree required under policy.  As a result, your denial for compassionate release is hereby affirmed.

Accordingly, your Request for Administrative Remedy is denied.  If you are dissatisfied with this response, you may appeal to the Regional Director within 20 calendar days of the date of this response. You may get the address and appeal form from your Unit Team.

_____          4/30/2020
B. von Blanckensee, Acting Complex Warden          Date

EXHIBIT "C"

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: MAY 29, 2020

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      WESTERN REGIONAL OFFICE

TO  : JAMES DWIGHT LEWIS, 28192-039
      LOMPOC FCI    UNT: B    QTR: E10-003L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE REGIONAL APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

```
REMEDY ID       : 1016562-R1
DATE RECEIVED   : MAY 29, 2020
RESPONSE DUE    : JULY 28, 2020
SUBJECT 1       : REDUCTION-IN-SENTENCE REQUEST
SUBJECT 2       :
```

EXHIBIT "D"

LOF - 1004916-F1
Part B - Response

This is in response to your Request for Administrative Remedy, received on January 29, 2020, wherein you allege you have been denied access to medical care, which you have requested during sick-call since July 29, 2019. You claim medical staff at FCI Lompoc are in violation of your 8th Amendment rights by denying you medical attention. As relief, you request to be evaluated for left foot pain and the Inspector General's office be contacted to conduct a formal investigation.

An investigation of this matter reveals the following. On December 26, 2017, you were evaluated by the Nurse Practitioner for a complaint regarding the confiscation of your insoles prior to your transfer to this institution. The Nurse Practitioner replaced your insoles, documented your pain level, and provided you individual counseling regarding exercise. You were evaluated by the Nurse Practitioner on September 5, 2018, for left foot pain. During this visit, X-rays of the left foot were ordered and the x-rays were completed on October 2, 2018. The x-rays revealed no radiographic evidence of an acute fracture or malalignment, metatarsus adductus deformity, and tiny left plantar calcaneal spurring.

On April 9, 2019, you were evaluated by the Physician Assistant (PA) for complaint of bilateral heel pain. You were provided educational material regarding rehabilitation exercises and non-steroidal anti-inflammatory medication for pain management. It was also documented by the PA that heel cups were not allowed while housed in the Special Housing Unit. On August 26, 2019, you reported to sick-call with complaints of pain in the bottom of your feet and you requested insoles. You were informed that gel insoles or heel cups can be purchased from the commissary. In the informal resolution, it was documented you have not purchased pain reliever medications, gel insoles, or heel cups from commissary in an attempt to manage your foot pain.

On February 11, 2020, you were evaluated by the Physician for left foot pain and a sore throat you have experienced for the past three weeks. The Physician documented, while you have not had a fever, a prescription for an antibiotic would be provided to you. It is also noted that you have experienced left foot pain off and on for years, which is worse when your weight is higher. You were educated on lifestyle modification and weight loss, which would alleviate your pain; your weight during this visit was 384 pounds. Further, the Physician recommended utilizing a heel cup in your left shoe. Repeat x-rays of the left foot were ordered along with lab work. You were instructed to follow-up at sick-call, as needed, and instructed to complete the entire antibiotic prescription as prescribed by the Physician. Based on the previous information, there is no evidence of staff misconduct or wrongdoings that would merit an official investigation.

You have been evaluated and treated based on clinical findings. You must follow the provider's suggestions and plan of care to ensure your pain symptoms are adequately managed. You may continue to follow-up at sick-call, as needed, or request an appointment with your provider through the Inmate Request to Staff system. Health Services staff will continue to provide necessary medical and follow-up care, in accordance with Program Statement 6031.04, <u>Patient Care</u>, and established standard medical practice.

Accordingly, your Request for Administrative Remedy is partially granted. If you are not satisfied with this reply, you may submit an appeal on the appropriate form (BP-10) to the Regional Director, Western Regional Office, Federal Bureau of Prisons, 7338 Shoreline Drive, Stockton, CA, 95219, within 20 calendar days of the date of this response.

_____          ____4/6/20____
J. Engleman, Acting Complex Warden        Date



**U.S. Department of Justice**
**Federal Bureau of Prisons**

---

**FOR IMMEDIATE RELEASE**
May 29, 2020

Contact: Office of Public Affairs
202-514-6551

### Inmate Death at FCI Lompoc

WASHINGTON, D.C.: On Monday, May 25, 2020, at approximately 1:00 p.m., Mohamed Yusuf was found unresponsive at the Federal Correctional Institution (FCI) in Lompoc, California. Responding staff immediately initiated life-saving measures. Staff requested emergency medical services (EMS) and life-saving efforts continued; however, Mr. Yusuf was subsequently pronounced dead by EMS personnel. Mr. Yusuf tested positive for COVID-19 on May 7, 2020, and was placed in isolation in accordance with Centers for Disease Control and Prevention guidance.

Mr. Yusuf was a 37-year-old male who was sentenced in the Eastern District of New York to a 132-month sentence for Conspiracy to Provide Material Support to a Foreign Terrorist Organization. He had been in custody at the Federal Correctional Complex Lompoc since May 24, 2018.

FCI Lompoc is a low security facility that currently houses 949 male offenders in Lompoc, California.

The Bureau of Prisons will continue to provide daily updates and information on actions related to COVID-19 at www.bop.gov/coronavirus/index.jsp.

Additional information about the Bureau of Prisons can be found at www.bop.gov.

###

James D. Lewis #28192-039
Federal Correctional Institution
3600 Guard Rd.
Lompoc, CA 93436



no postmark
6/26/20


RECEIVED
JUL - 1 2020
CLERK'S OFFICE
U.S. DISTRICT COURT

⇔ 28192-039 ⇔
USDC Clerks Office
231 W Lafayette BLVD
Room 564
Detroit, MI 48226
United States

LEGAL MAIL            LEGAL MAIL