

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                    Case No. 00-CR-50054-01
Plaintiff(s),                       Hon. Judge Bernard A. Friedman


                    vs.


JAMES DWIGHT LEWIS,
Defendant._____/


### DEFENDANT'S SUPPLEMENTAL MOTION TO EMERGENCY MOTION FOR COMPASSIONATE RELEASE


     The Defendant submits this supplemental motion to provide addi-
tional information relevant to Lewis's motion for compassionate release.

     Mr. Lewis filed his original motion on June 23, 2020. He has
since received opinoins of the court in two (2) similar cases requesting
compassionate release. These opinions relate to Mr. Lewis's health
issues concerning the contraction of COVID-19 and the reasons why the
Court should still grant his motion in the face of testing positive.

     The long-term effects of infection are uncertain in COVID-19
cases. Mr. Lewis still suffers from shortness of breath and mild
headaches since contracting COVID-19. It is uncertain how long these
effects will last. Nor is there any certainty whether those infected
will have immunity from re-infection.

     Subsequently, Mr. Lewis calls to the Court's attention opinions
of the court in United States v. Kess, No. ELH-14-480 (D. Md. June 17,
2020); and also United States v. Baron, No. 2:06-cr-02095-SAB (E.D.
Wash. June 16, 2020). Both these inmates were housed with Mr. Lewis
at FCI Lompoc.

The plague of COVID-19 is accelerating throughout the state of California. FCI Lompoc has not reduced the inmate population as directed by Attorney General Barr's March 26, and April 3, 2020 memorandamus to the Director of the Bureau of Prisons.

Because Mr. Lewis's life is still in danger, he request that the Court take into consideration opinions of the court in attachments "A" and "B" of this supplemental motion.

Date: July 1, 2020

Respectfully Submitted,

/s/ James Dwight Lewis

James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

2

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail Service, First-Class postage prepaid, properly addressed. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as he is indigent, detained and has no other means.

Done this 1st day of July 2020

Respectfully Submitted.

/s/ James Dwight Lewis
James Dwight Lewis, Pro se
Reg. No. 28192-039
FCI Lompoc
3600 Guard Rd.
Lompoc, CA 93436

3

Criminal No.: ELH-14-480    06-17-2020

UNITED STATES OF AMERICA Plaintiff, v. GARY KESS, Defendant.

Ellen Lipton Hollander United States District Judge

# MEMORANDUM

Defendant Gary Kess, Jr. through counsel, has filed an "Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 52. The Motion is supported by a memorandum of law (ECF 52-1) (collectively, the "Motion") and one exhibit containing portions of Kess's medical records. ECF 52-2. Kess, whose medical history includes congestive heart failure, diabetes, morbid obesity, and hypertension, is incarcerated at FCI Lompoc, in Lompoc, California. Of import, he tested positive for COVID-19 on May 9, 2020, ECF 52-1 at 1, but seems to have recovered. Nevertheless, he asserts that "extraordinary and compelling reasons" warrant his release in light of the COVID-19 pandemic and his serious health conditions.

Mr. Kess initially filed a pro se motion for compassionate release. ECF 48. Counsel was appointed for him (see ECF 50), and a second motion was filed. See ECF 52.

The government opposes the Motion. ECF 54. It has also submitted several sealed exhibits. ECF 54-1 to ECF 54-4. Defendant has replied. ECF 56. And, he has submitted an additional exhibit. ECF 56-1.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall grant the Motion.

# I. Background

On October 8, 2014, a grand jury in the District of Maryland returned an Indictment charging Kess with conspiracy to distribute and possession with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. §§ 846, 841. ECF 1. On January 13, 2015, pursuant to a Plea Agreement (ECF 29), Kess entered a plea of guilty to Count One of the Indictment, charging conspiracy to distribute more than 100 grams of heroin. The offense of conviction carried a mandatory minimum sentence of five years' imprisonment, with a maximum of 40 years. See ECF 29, ¶ 3.

Kess tendered his plea of guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C). Under the "C plea," the parties agreed to a term of imprisonment of 144 months in the custody of the Federal Bureau of Prisons (the "BOP"), followed by 5 years of supervised release. Id. ¶ 8. Notably, the Plea Agreement provided that, "even if the Defendant is determined not to be a Career Offender—either at sentencing or at any time thereafter—a sentence of 144 months imprisonment is the appropriate disposition of this case under the factors set forth in 18 U.S.C. § 3553(a)." Id. ¶ 7.

Of relevance here, the Plea Agreement stipulated that Kess qualified as a Career Offender, pursuant to § 4B1.1(a) of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G"). This is because the instant offense is a "controlled substance offense" and Kess had two prior qualifying drug convictions. Id. ¶ 6(b); see U.S.S.G. § 4B1.1(a). Moreover, Kess stipulated to a base offense level of 34, and a criminal history category of VI. Id. Crediting defendant's prompt acceptance of responsibility and his willingness to plead guilty, the government agreed to a three-level reduction in his offense level under U.S.S.G. § 3E1.1, resulting in a final offense level of 31. Id. ¶ 6(c).

The Plea Agreement included a stipulation of facts. Id. ¶ 6(a). According to the stipulation, in June 2014 Kess conspired to distribute heroin in Maryland's Eastern Shore region. Id. On June 23, 2014, law enforcement recovered 150 grams of heroin and more than $6,000 from defendant's minivan. Id. And, on the same date, after

law enforcement witnessed a transaction between defendant and a coconspirator, law enforcement recovered more than 80 grams of heroin and $4,950 from the vehicle of the codefendant. *Id.* The money found in both vehicles was packaged in identical Provident State Bank envelopes. *Id.* Law enforcement also intercepted a message between defendant and a coconspirator relating to a proposed transaction involving 150 grams of heroin. *Id.* In sum, Kess admitted that "it was reasonably foreseeable to [him] that he and other members of the conspiracy distributed and possessed with intent to distribute more than 100 grams of heroin." *Id.*

The Presentence Investigation Report ("PSR," ECF 33) deemed Kess a Career Offender, as anticipated. *Id.* ¶ 22. Therefore, based on an offense level of 31 and criminal history of VI, Kess's Guidelines range called for a period of incarceration ranging from 188 to 235 months. *Id.* ¶ 50. If he were not a Career Offender, however, Kess's final offense level would have been 21, with a Criminal History Category of IV, and Guidelines of 57 to 71 months of imprisonment.

Sentencing was held on March 17, 2015. ECF 36. Pursuant to the Plea Agreement, the Court imposed a term of imprisonment of 144 months, with credit dating from July 31, 2014. ECF 243 (Judgment).

Kess is now 42 years of age. *See* ECF 33. He is presently incarcerated at FCI Lompoc. Notably, he has served about 70 months of his sentence. ECF 52-1 at 2. This equates to approximately 50% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b). Defendant has a projected release date of October 9, 2024. *Id.*

As indicated, Kess's medical history includes congestive heart failure, diabetes, morbid obesity, and hypertension. *See* ECF 52-2 at 2-8. He petitioned the Warden at FCI Lompoc on April 2, 2020, seeking a reduction in sentence. ECF 52-3 at 10. The Warden denied Kess's request on April 13, 2020. *Id.* at 11. Thereafter, in May 2020, he tested positive for COVID-19.

## II. Discussion

### A. Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See, e.g., Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment." Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights, may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

**(I) suffering from a serious physical or medical condition**,

(I) suffering from a serious functional or cognitive impairment, or

(II) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). The Attorney General issued a second memorandum to Carvajal on April 3, 2020, finding "the requisite emergency *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See, e.g., United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, compassionate release is a "rare" and "extraordinary" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *see United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## B. COVID-19

It is necessary to acknowledge the circumstances that have led to defendant's Motion in order to fully appreciate what is at stake. We are currently "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). That crisis is COVID-19. It has spawned a public health crisis "without modern equivalent." *Garbett v. Herbert*, ___ F. Supp. 3d ___, 2020 WL 2064101, at *10 (D. Utah Apr. 29, 2020). The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

Much remains unknown about the virus. But, this much is certain: the novel coronavirus is highly contagious and often quite dangerous. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Although the virus has "varying effects on people," *Garbett*, 2020 WL 2064101, at \*10, and many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at \*1 (citation omitted). And, there is currently no vaccine, cure, "or proven effective treatment." *Id.* (citation omitted).

As of June 10, 2020, COVID-19 has infected over 2 million Americans and caused more than 113,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed June 10, 2020). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB 16.

In addition, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at \*1 (E.D. Mich. May 21, 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Businesses have recently begun to reopen. But, many businesses remain closed or are opened with restrictions.

Thus far, the only way to slow the spread of the virus is to practice "social distancing," and these restrictions remain in effect in many places. *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). However, social distancing is particularly difficult in the penal setting. *Seth*, 2020 WL 2571168, at \*2. Prisoners have little control with respect to their ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at \*1. They are not readily able to secure products to protect themselves, such as masks and hand sanitizers. And, they are not able to decide for themselves how or where to eat or sleep. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at \*2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at \*2. Moreover, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 334 at 6 (detailing "preventive and mitigation measures" that BOP has implemented to combat COVID-19); *id.* at 6-7. As the Third Circuit put it in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread." Nevertheless, as in the community at large, the virus persists in penal institutions. As of June 10, 2020, the BOP reported that 2,134 inmates and 190 BOP staff tested positive for COVID-19, and 79 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/.

With respect to FCI Lompoc, the BOP reports that there is currently only one positive inmate. However, there are 889 recovered cases. *Id.* The defense asserts that more than 1,000 inmates and staff have been infected. ECF 52-1 at 1; *id.* at n.2. *But see* ECF 52-1 at 10 (defense stating that 906 inmates and 18 staff members have tested positive at FCI Lompoc).

## C. Analysis

Kess moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19. ECF 52-1 at 11. Further, he contends that the § 3553(a) sentencing factors counsel in favor of reducing his sentence to time served. *Id.* at 12-14. In this regard, he observes that following his sentencing, the Fourth Circuit held in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) that federal drug conspiracy offenses under 18 U.S.C. § 846 categorically are not controlled substance offenses under U.S.S.G. § 4B1.2(b). *See* ECF 52-1 at 13. Therefore, had Kess been sentenced today, he would not have been deemed a Career Offender. And, were that the case, his Guidelines range would have been 57 to 71 months of imprisonment. *Id.*

The government opposes Kess's Motion. It maintains that there is no compelling basis for Kess's release. Although Kess tested positive for COVID-19 on May 9, 2020 (ECF 52-1 at 1; ECF 54 at 6), he seemingly recovered from COVID-19 by May 22, 2020, without the need for hospitalization. ECF 54 at 6; *see also* ECF 54-2 (BOP records for Kess showing that he recovered from COVID-19). Further, the government observes that Kess recovered without needing treatment in a hospital or a ventilator. ECF 54 at 6 (citing ECF 54-3, BOP housing records).

Defendant disputes the issue of recovery, claiming that the records do not reflect any testing by BOP to support that conclusion. ECF 56 at 1. Rather, he posits that the BOP has merely relied "on visual cues and timing," without "a more critical" assessment. *Id.* at 2. In the absence of culturing the defendant, argues Kess, the BOP cannot determine if he "is still shedding . . . the virus." *Id.* Therefore, he urges the Court to conclude that he has not recovered. *Id.* at 3.

Notwithstanding defendant's apparent recovery, he contends that "he remains very much at risk" of a reinfection and other "long-term consequences . . . due to his underlying medical conditions." *Id.* As he puts it, there are "very real risks associated with a hasty declaration of 'recovery' for a federal inmate. *Id.* at 4.

To be sure, the coronavirus is "not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). But, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions and age qualify as a compelling reason for compassionate release. *See, e.g.*, *United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (defendant is 56 years of age and suffers from multiple sclerosis and hypertension); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (defendant has hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Bess*, No. 16-cr-156, 2020 WL 1940809, at *8 (W.D.N.Y. Apr. 22, 2020) (defendant has congestive heart failure, coronary artery disease, diabetes, and hypertension); *United States v. McCarthy*, ___ F. Supp. 3d ___, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (defendant "is 65 years old and suffers from COPD, asthma, and other lung-related ailments"); *United States v. Zukerman*, ___ F. Supp. 3d ___, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (defendant has diabetes, hypertension, and obesity); *United States v. Rodriguez*, ___ F. Supp. 3d ___, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020) (defendant has Type 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity); *United States v. Gonzalez*, No. 18-CR-1536155, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable").

Of relevance here, other jurists have released inmates who have ostensibly recovered from COVID-19, based on extraordinary and compelling health reasons. *See* ECF 56 at 5, n.24. For example, in *United States v. Christopher Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020), the defendant had contracted COVID-19 in May 2020. *Id.* at *4. And, he had supposedly recovered. *Id.* Yet, Judge Grimm observed, *id.*: "Although recovered, it is uncertain whether [the defendant] can contract COVID-19 more than once, and the potential long-term effects of the illness are still undetermined." In that case, based on the risks presented by defendant's morbid obesity, the conditions at the penal institution, "the uncertainty whether [the defendant] will experience further complications related to COVID-19," and the finding that the defendant is not a danger to the community, Judge Grimm determined that there were compelling reasons for a sentence modification. *Id.*

Certainly, there are critical differences between *Williams* and this case. In *Williams*, the defendant's guidelines called for a period of incarceration ranging only from 21 to 27 months, and he received a sentence of 27 months. And, the defendant served much of the sentence by the time Judge Grimm considered his motion. Here, the defendant has served almost 70 months of a 12-year sentence, exclusive of good conduct credit. Nevertheless, Kess's medical conditions qualify him for consideration of compassionate release.

The court must next consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include, 18 U.S.C. § 3553(a): (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Without question, defendant's Career Offender status influenced the length of his sentence. At the relevant time, the underlying offense—conspiracy to distribute a controlled substance under 21 U.S.C. § 846—was considered a "controlled substance offense. However, as indicated, the Fourth Circuit recently held in *Norman*, 935 F.3d 232, that federal drug conspiracy offenses categorically are not controlled substance offenses for purposes of U.S.S.G. § 4B1.2(b). *See id.* at 237-39. If Kess were sentenced today, he would not qualify as a Career Offender. And, he would have a final offense level of 21, with a Criminal History Category of IV, and advisory guidelines of 57 to 71months of incarceration.

As the Supreme Court has explained, the Guidelines are "the starting point and the initial benchmark" at every sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see Freeman v. United States*, 564 U.S. 522, 529 (2011) ("The Guidelines provide a framework or starting point . . . for the judge's exercise of discretion."); *see United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). Indeed, the Court has instructed that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49.

The government insists that the change resulting from *Norman* has no bearing here, because the defendant agreed to the sentence he received. ECF 54 at 9. Thus, the government claims that "Kess should not be heard to argue or complain about that to which he previously agreed." *Id.* The government's position overlooks that the plea agreement was undoubtedly framed by the fact that the defendant was thought to be a Career Offender, with Guidelines that exceeded the agreed upon sentence. *See also* ECF 34 at 1-2.

I recognize that Kess has a significant criminal history. But, it dates to when he was 17 years of age. And, his last offense occurred in 2003, when he was 24; he was released from incarceration in 2007. *See* ECF 33, ¶ 29. Moreover, his Criminal History reflects 9 points. *See* ECF 33, ¶ 30. Therefore, but for his Career Offender status, his Criminal History Category would have been a IV. *Id.* ¶ 31.

Kess is the father of four children, all born to the same mother. *Id.* ¶ 39. His various health conditions are noted in the PSR. *Id.* ¶ 41.

As I see it, Kess's incarceration for a period of about 70 months is sufficient to serve the goals of incapacitation, deterrence, retribution, and rehabilitation. I need not ignore that he has already served a sentence equivalent to the top end of the Guidelines that should have applied here. And, there is nothing about this case that suggests an above-Guidelines sentence is warranted. *See United States v. Decator*, CCB-95-0202, ____ F. Supp. 3d ____, 2020 WL 1676219 (D. Md. Apr. 6. 2020) (concluding, with respect to a motion for compassionate release, that the court may consider the impact of legislative change in sentencing under 18 U.S.C. § 924(c)).

If Kess earned credit for good conduct, he would not have had to serve all 71 months of a Guidelines sentence.

The government has noted an appeal in *Decator*. *See* CCB-95-0202 ECF 397. --------

Based on the above considerations, combined with the fact that the defendant's lengthy sentence was based, in part, on a mistaken Career Offender designation, I find that the § 3553(a) factors weigh in favor of reducing Kess's sentence to time served, plus 14 days, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to be followed by a period of home detention for a period of nine months, as a condition of supervised release.

## III. Conclusion

For the foregoing reasons, I shall grant the Motion. Kess's sentence shall be reduced to time served plus 14 days. The terms and conditions of supervised release to which Kess was originally sentenced will remain in place, with the added condition that Kess shall, for a period of nine months, serve a period of home detention.

A separate Order follows. Date: June 17, 2020

ATTACHMENT "B"

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Jun 16, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO.  2:06-CR-02095-SAB-1 |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| JORGE BARON, | **DEFENDANT'S EMERGENCY** |
| Defendant. | **MOTION FOR** |
| | **COMPASSIONATE RELEASE** |

Before the Court is Defendant's Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c) (Compassionate Release), ECF No. 145. Defendant is proceeding *pro se*. The United States is represented by Thomas Hanlon. For purposes of presenting the motion, Defendant was represented by Craig Webster. The motion was considered without oral argument.

Defendant asks the Court to reduce his sentence to time served or, alternatively, allow him to serve the remainder of his sentence in home confinement. The Court sentenced Defendant to 210 months confinement on June 13, 2007 for two counts of Felon in Possession of a Firearm. ECF No. 145 at 2; ECF No. 95. He is currently incarcerated at Federal Correctional Institution Lompoc ("FCI Lompoc") Prison in Lompoc, California. He is currently scheduled

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE * 1**

1  for release on September 8, 2021. Upon completion of his federal sentence, he

2  must serve eighteen months in Washington State prison.

3          When Defendant filed his motion, he indicated there were a handful of

4  confirmed positive COVID-19 cases among inmates; that number has swelled

5  astronomically since then. According to news reports, nearly all inmates at FCI

6  Lompoc have tested positive for COVID-19, though many have remained

7  asymptomatic, despite prison rules requiring inmates to maintain physical distance

8  and confining them to their quarters at all times.[1] At least four inmates have died.

9          In early April 2020, Defendant submitted a compassionate release request to

10  his warden, citing his age and diagnoses of diabetes and hypertension, by filing out

11  a piece of paper and giving it to a guard. Defendant's medical records also indicate

12  that he is insulin-dependent, obese, and has decreased kidney function and

13  hyperlipidemia. Unlike other prisons, staff at FCI Lompoc specifically directed

14  inmates not to file official compassionate release requests. ECF No. 152, Ex. B.

15  Rather, inmates at FCI Lompoc were informed that all inmates were being

16  considered for compassionate release, but that they would receive no notice if they

17  were not chosen for release. *Id.* Mr. Baron never received any notice regarding the

18  status of his request for release or any information regarding a decision as to

19  whether he would be released. It is undisputed that his age and medical conditions

20  place him among the population most at-risk from COVID-19. As of May 6, 2020,

21  the date he filed his Motion, the warden had not responded to Defendant's request.

22  Since then, as far as the Court is aware and based on defense counsel's

---

23  [1] Alex Wigglesworth, *Officials mishandled coronavirus outbreaks at Lompoc and*
24  *Terminal Island prisons, lawsuits claim,* L.A. TIMES, May 17, 2020
25  (https://www.latimes.com/california/story/2020-05-17/officials-mishandled-
   lompoc-terminal-island-prison-outbreaks-lawsuit); Dave Minsky, *Nearly all*
26  *inmates at Lompoc FCI tested positive for coronavirus, most asymptomatic,*
   LOMPOC RECORD, June 9, 2020 (https://lompocrecord.com/news/local/crime-and-
27  courts/nearly-all-inmates-at-lompoc-fci-tested-positive-for-coronavirus-most-
28  asymptomatic/article_f3fb06d7-f231-52b3-8f89-f21f11b73974.html).

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE** * 2

1  representation, the warden has not responded to Defendant's request at all and has
2  no intention to do so.

3      The Government opposes the motion. In particular, the Government argues
4  that Defendant poses a danger to the community and that home confinement would
5  not adequately ensure the community's safety. ECF No. 147 at 4. The Government
6  argues that Defendant does not suffer from a terminal illness warranting
7  compassionate release and that he has failed to show that he has exhausted his
8  administrative remedies, apparently believing that the forms submitted by
9  Defendant in April do not satisfy this burden (despite the fact that Defendant did
10 exactly as directed by FCI Lompoc staff). *Id.* at 5. Finally, the Government argues
11 that Defendant has not demonstrated an extraordinary and compelling reason
12 justifying his release, that his chance of being infected by COVID-19 are
13 speculative, and that he might be at even greater risk of infection if released and
14 returned to Yakima County. The Government asks that the Court deny this motion
15 and order Defendant to petition Bureau of Prisons for release instead.

16     Defendant brings his motion pursuant to 18 U.S.C. 3582(c)(1)(A).[2] Under
17 this provision of the First Step Act, Defendant can seek compassionate release after

18

19 _____

20 [2] (c) Modification of an imposed term of imprisonment.--The court may not
   modify a term of imprisonment once it has been imposed except that--
21     (1) in any case--
22         (A) the court, upon motion of the Director of the Bureau of Prisons, or
   upon motion of the defendant after the defendant has fully exhausted all
23 administrative rights to appeal a failure of the Bureau of Prisons to bring a
   motion on the defendant's behalf or the lapse of 30 days from the receipt of
24 such a request by the warden of the defendant's facility, whichever is earlier,
   may reduce the term of imprisonment (and may impose a term of probation
25 or supervised release with or without conditions that does not exceed the
   unserved portion of the original term of imprisonment), after considering the
26 factors set forth in section 3553(a) to the extent that they are applicable, if it
   finds that--
27         (i) extraordinary and compelling reasons warrant such a reduction; or
28

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE * 3**

1  exhausting administrative remedies within the Bureau of Prisons. 18 U.S.C.

2  § 3582(c)(1)(A). He may be eligible for compassionate release if the Court finds

3  "extraordinary or compelling reasons" to warrant a sentence reduction and

4  Defendant is determined not to pose a risk of danger to the community and also

5  finds a sentence reduction is consistent with United States Sentence Commission

6  policy statements. *Id.* The Sentencing Guidelines instruct the Court to consider the

7  sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for

8  compassionate release, and provide that the Court should not grant a sentence

9  reduction if the defendant poses a risk of danger to the community, as defined in

10  the Bail Reform Act. U.S.S.G. § 1B1.13.

11      The Court finds that Defendant has exhausted his administrative remedies as

12  required by the First Step Act. Defendant made the required request for

13  compassionate release on April 7, 2020. The statute gives the Court the

14  opportunity to be involved 30 days after such a request is made. The statute does

15  not require issue exhaustion as argued by the United States and even if the Court

16  were inclined to impose that requirement, it would be futile. The Court is frustrated

17  by the fact that the warden has apparently ignored Defendant's request, in spite of

18  the fact that COVID-19 is running rampant in FCI Lompoc. There is nothing to

19  suggest that a second request by Defendant would be treated in any other way. By

20  ignoring these requests, the warden invited the Court's involvement, an invitation

21

22  _____

23      (ii) the defendant is at least 70 years of age, has served at least 30
        years in prison, pursuant to a sentence imposed under section 3559(c), for
24      the offense or offenses for which the defendant is currently imprisoned, and
        a determination has been made by the Director of the Bureau of Prisons that
25      the defendant is not a danger to the safety of any other person or the
        community, as provided under section 3142(g);
26
27  and that such a reduction is consistent with applicable policy statements issued by
    the Sentencing Commission.
28  18 U.S.C. § 3582(c)(1)(A).

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE * 4**

1  the Court accepts. The COVID-19 pandemic requires action, and the Court is not
2  willing to wait.
3      The Court finds that extraordinary and compelling reasons justify a sentence
4  reduction to time served. Bluntly, FCI Lompoc has utterly abandoned its
5  responsibility to protect inmates like Defendant. Despite assurances by BOP that
6  they have matters under control—including in statements to members of Congress
7  in Senate hearings—this is clearly not the case. FCI Lompoc was already
8  overpopulated, contributing to the nearly universal infection rate in the prison.
9  Already the subject of at least one lawsuit for the conditions leading to these
10  astronomical infection rates,[3] FCI Lompoc has shown it has no ability to protect
11  those incarcerated there.
12      Defense counsel indicates that Defendant himself tested positive for the
13  virus. After testing positive, Defendant lost 25 pounds in only two weeks, cannot
14  breathe when he sleeps, wakes up in sweats, and suffered from head and throat
15  pain. The fact that Defendant has so far survived being infected by COVID-19
16  does not and will not prevent the Court from granting the request for
17  compassionate release. The long-term effects of infection are uncertain—it is
18  uncertain whether infection will cause additional health problems in the short-term,
19  whether infection confers immunity from re-infection, and whether those infected
20  will require long-term care. In addition, Defendant suffered and continues to suffer
21  significant psychological trauma from awaiting infection, being infected, and
22  dealing with the aftereffects of infection. Finally, Defendant has only 15 months
23  remaining on a 210-month sentence.
24      Defendant's health conditions, the physical and psychological trauma caused
25  by COVID-19 infection, and FCI Lompoc's clear failure to prevent and contain the

26  _____
27  [3] *See generally*, Complaint—Class Action for Declaratory Relief and Injunctive
   Relief and Petition for Writ of Habeas Corpus, *Carror Tores v. Milusnic*, 2:20-CV-
28  04450-CBM-PVC (C.D. Cal. May 16, 2020)

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE * 5**

1  spread of COVID-19 and ensure the health of those who are infected constitute

2  extraordinary and compelling circumstances justifying compassionate release.

3  Granting Defendant's request for compassionate release satisfies the Section

4  3553(a) factors. The Court therefore grants Defendant's motion.

5       Accordingly, **IT IS HEREBY ORDERED**:

6       1.  Defendant's Emergency Motion for Reduction of Sentence Pursuant to

7  18 U.S.C. § 3582(c) (Compassionate Release), ECF No. 65, is **GRANTED**.

8       2.  Simultaneously herewith, the Court will enter an Amended Judgment

9  imposing a sentence of "time served."

10       3. The United States Marshal Service and/or the United States Bureau of

11  Prisons shall promptly release Defendant from custody.

12       **IT IS SO ORDERED.** The District Court Executive is hereby directed to

13  file this Order and provide copies to counsel, Bureau of Prisons, the U.S. Marshals

14  Service, and the U.S. Probation Office.

15       **DATED** this 16th day of June 2020.

16

17

18

19

20  

21              Stanley A. Bastian

22             United States District Judge

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR
COMPASSIONATE RELEASE * 6**



**Individualized Reentry Plan - Program Review  (Inmate Copy)**

SEQUENCE: 00927604

Dept. of Justice / Federal Bureau of Prisons

Team Date: 01-29-2020

Plan is for inmate: LEWIS, JAMES DWIGHT  28192-039

| | | | |
|---|---|---|---|
| Facility: | LOF  LOMPOC FCI | Proj. Rel. Date: | 06-04-2026 |
| Name: | LEWIS, JAMES DWIGHT | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 28192-039 | DNA Status: | ALM02846 / 06-02-2010 |
| Age: | 42 | | |
| Date of Birth: | 03-05-1977 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOF | CMPD E/W | COMPOUND EVENING WATCH PM CREW | 08-20-2019 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOF | ESL HAS | ENGLISH PROFICIENT | 01-25-2002 |
| LOF | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-25-2002 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LOM SCP | C | ACE TIME MANAGMENT CLASS | 07-05-2018 | 08-23-2018 |
| ALF | C | VIDEO NUTRITION CLASS | 08-08-2017 | 09-29-2017 |
| ALF | C | ACE WRITERS WORKSHOP CLASS | 07-25-2017 | 09-26-2017 |
| ALF | C | ACE FOUNDATION OF WESTERN CIV | 07-24-2017 | 09-25-2017 |
| ALF | C | ACE DISCOVERY ATLAS CLASS | 01-26-2017 | 03-30-2017 |
| ALF | C | ACE FOUNDATION OF WESTERN CIV | 01-23-2017 | 03-27-2017 |
| ALF | C | RP6-INSIDE OUT DAD PARNT PROG | 01-03-2017 | 01-20-2017 |
| ALF | C | ACE DISCOVERY ATLAS CLASS | 10-17-2016 | 12-19-2016 |
| ALF | C | RP6-BRICK WALLS | 12-05-2016 | 12-23-2016 |
| ALF | C | ACE HISTORY OF THE US CLASS | 07-11-2016 | 09-19-2016 |
| VVM | C | SHU-ACE PARENTING | 09-11-2014 | 12-22-2014 |
| VVM | C | SHU-ACE GED MATH | 09-11-2014 | 12-22-2014 |
| VVM | C | SHU-ACE LITERATURE AND ARTS | 09-11-2014 | 12-18-2014 |
| VVM | C | SHU-ACE ESL INTERMEDIATE | 09-11-2014 | 12-18-2014 |
| MAN | C | RPP#5 RELEASE PREP PROG A&O | 10-29-2014 | 10-29-2014 |
| SAF | C | A HISTORY OF SCOTLAND | 01-07-2014 | 03-11-2014 |
| SAF | C | R-6 SMALL GAS ENGINE REPAIR | 11-04-2013 | 12-30-2013 |
| SAF | C | R-6/GRO - RELATIONSHIP SKILLS | 08-08-2013 | 09-18-2013 |
| SAF | C | FUNDAMENTALS OF SEWING POLE | 03-04-2013 | 03-22-2013 |
| SAF | C | R-1/HLT AIDS AWARE | 11-27-2012 | 11-27-2012 |
| MCK | C | FAT LOSS M-W-F 1015AM-1115AM | 10-30-2011 | 12-07-2011 |
| MCK | C | NOVEL WRITING M&W 6:30PM-8:30P | 12-05-2011 | 01-20-2012 |
| ALM | C | ACE GREEN INDUSTRY | 02-17-2009 | 04-07-2009 |
| ALM | C | ACE GEOMETRY | 02-18-2009 | 04-15-2009 |
| ALM | C | 10 HOUR OSHA TRAINING | 03-31-2009 | 04-01-2009 |
| FLF | C | AEROBICS M-TH 2:10-2:40 PM | 09-11-2006 | 11-17-2006 |
| FLF | C | ABDOMINALS M-TH 6:15-6:45 AM | 09-11-2006 | 11-17-2006 |
| FLF | C | CALISTHENIC/ROPE M-TH 615-645A | 09-11-2006 | 11-17-2006 |
| FLF | C | ADVANCED LEATHERCRAFT  6-9 PM | 01-10-2005 | 03-06-2005 |
| FLF | C | REC LEATHERCRAFT  6-8 PM | 07-28-2004 | 10-11-2004 |
| FLF | C | SOFT LEATHER  6-8 PM | 07-28-2004 | 10-11-2004 |
| FLF | C | GREAT BATTLES IN US HISTORY | 01-05-2004 | 03-22-2004 |
| OXF | C | ACE - ALGEBRA | 07-09-2002 | 09-30-2002 |
| OXF | C | ACE - LEGAL RESEARCH CLASS | 01-22-2002 | 05-21-2002 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|



**Individualized Reentry Plan - Program Review  (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LEWIS, JAMES DWIGHT  28192-039

SEQUENCE: 00927604
Team Date: 01-29-2020

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-25-2012 |
| CARE1-MH | CARE1-MENTAL HEALTH | 12-30-2010 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 01-08-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 01-08-2018 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 08-18-2011 |

## FRP Details

| Most Recent Payment Plan |
|---|

**FRP Assignment:     COMPLT     FINANC RESP-COMPLETED        Start: 05-13-2003**

Inmate Decision:   **AGREED**          **$45.00**              Frequency:  **MONTHLY**
Payments past 6 months:        **$0.00**          Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $300.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**Payment Details**

Trust Fund Deposits - Past 6 months:   $1,453.17                    Payments commensurate ?   N
New Payment Plan:

| Inmate is in COMPLT status. |
|---|

## Progress since last review

| No programs taken during this review period.  Working on Compound Crew. |
|---|

## Next Program Review Goals

| By 7-26-2020:  enroll in a VT/ACE course of interest once the new program catalog comes out; and continue to receive good work evaluations on Compound. |
|---|

## Long Term Goals

| By 12-19-2026: Successfully complete GED (done), various VT/ACE courses (done), employment skills courses, resume writing, and attend mock job fairs; complete FRP financial obligations (done); the Release Preparation Program (RPP/ROP); attend release planning courses and secure halfway house placement; secure all IDs for release planning (has: SSN); attend Anger Management, Parenting (done), Financial Management, wellness courses (done), and personal counseling programs (done). Save a minimum of $1,800 on your account for release needs. Complete the 12-hour Freedom from Drugs (DEP) class (done). |
|---|

## RRC/HC Placement

|   |
|---|

## Comments

| ** No notes entered ** |
|---|

James D. Lewis #28192-039
Federal Correctional Institution
3600 Guard Rd
Lompoc, CA 93436



7/2/20

R E C E I V E D
JUL 21 2020
CLERK'S OFFICE
U.S. DISTRICT COURT

LEGAL MAIL

Clerk of the Court
USDC
231 W. Lafayette BLVD
Detroit, MI 48226

LEGAL MAIL

LEGAL MAIL

FCI LOMPOC
7/2/20